■ NEW YORK CITY TRANSIT AUTHORITY, Respondent, v AMALGAMATED TRANSIT UNION, AFL-CIO, LOCAL 726, et al., Appellants, et al., Defendants. [822 NYS2d 594]—

In an action to enjoin a violation of Civil Service Law § 210, the defendants Local 726 of the Amalgamated Transit Union, AFL-CIO, and Local 1056 of the Amalgamated Transit Union, AFL-CIO, appeal from an order and judgment (one paper) of the Supreme Court, Kings County (Jones, J.), dated December 21, 2005, which, after a hearing, granted that branch of the plaintiffs' motion which was to adjudge them in contempt of court for their disobedience of a preliminary injunction in an order of the same court dated December 15, 2005, adjudged them in contempt of court, and imposed a fine in the sum of $50,000 per day on the defendant Local 726 of the Amalgamated Transit Union, AFL-CIO, and a fine in the sum of $75,000 per day on the defendant Local 1056 of the Amalgamated Transit Union, AFL-CIO, to continue until the contemnors demonstrated compliance with the order dated December 15, 2005.

Ordered that the order and judgment is affirmed, with costs.

By order and judgment dated December 21, 2005, the Supreme Court, inter alia, granted that branch of the plaintiff's motion which was to adjudge the appellants, Local 726 of the Amalgamated Transit Union, AFL-CIO (hereinafter Local 726), and Local 1056 of the Amalgamated Transit Union, AFL-CIO (hereinafter Local 1056), in contempt of court for their disobedience of a preliminary injunction in an order of the Supreme Court, Kings County, dated December 15, 2005, inter alia, restraining them from conducting a strike in violation of Civil Service Law §§ 200-212 (hereinafter the Taylor Law).

The procedural and other operative facts are substantially similar to those set forth in the related appeal (*see New York City Tr. Auth. v Transport Workers Union of Am., AFL-CIO,* 35 AD3d 73 [2006] [decided herewith] [hereinafter the Local 100 case]).

The appellants' members are engaged primarily in the operation and maintenance of the plaintiff's bus facilities in Queens and Staten Island. Local 726 has about 1,450 active members, and Local 1056 has about 1,650.

On December 15, 2005, on the motion of the plaintiff, the Supreme Court issued a preliminary injunction, inter alia, restraining the appellants from engaging in a strike in violation of the Taylor Law. Nevertheless, members of Local 726 and Local 1056 went on strike at 12:01 A.M. on December 20, 2005. On that same day, the plaintiff made a motion, inter alia, to adjudge

the appellants in contempt of the December 15, 2005 order. Among other things, the plaintiff sought sanctions in the amount of $500,000 against each of the appellants, with a doubling of the fine for each day the appellants remained in violation of the preliminary injunction.

On December 21, 2005 the Supreme Court conducted a hearing on the contempt motion. In pertinent part, counsel for the appellants stipulated to the fact that the appellants "were on strike." Further, as of the end of November 2005, Local 726 had about $316,000 in assets, and Local 1056 had about $298,000 in assets. Local 726 did not rent an office or own any real estate, but was provided "space" for a union office in a depot. Local 1056 rented an office in Queens. Local 726 had no employees; Local 1056 employed one administrative staff member.

After a hearing, the Supreme Court granted the plaintiff's motion to the extent of adjudging the appellants to be in criminal contempt of the preliminary injunction, and imposing a $50,000 per diem fine on Local 726, and a $75,000 per diem fine on Local 1056. The fines were to "continue" until such time as each local demonstrated its compliance with the December 15, 2005 order. The appellants remained on strike until about 3:00 P.M. on December 22, 2005. In subsequent motion practice which is not before us on this appeal, of which we take judicial notice, the plaintiff moved, inter alia, for an order setting forth in a determinate amount the total contempt fines of the appellants. The court granted the motion, and set the total fine to be paid by Local 726 at $125,000, and the fine to be paid by Local 1056 at $187,500, payable to the Clerk of the Supreme Court, Kings County. The Supreme Court specifically recognized that the appellants ordered their members back to work at or about midday on December 22, 2005, rather than waiting until 11:59 P.M. Thus, the total fines in each case were arrived at by multiplying the per diem fine by two for the first two full days of the strike, and pro rating the third day to credit the locals for calling off the strike at or about midday.

Local 1056 argues that the evidence was insufficient to establish that it violated the December 15, 2005 injunction, because its counsel stipulated at the contempt hearing that the Local's *members,* as opposed to the Local itself, conducted a strike; that, the argument proceeds, without more, did not establish that Local 1056 caused, instigated, or engaged in the strike activities of its members. While it is true that counsel for Local 1056 specifically stated that the Locals "were prepared to stipulate that *members* of 726 and members of 1056 were on strike" (emphasis added), the Supreme Court subsequently stated: "All

right. We have a stipulation that both Locals are, in fact, on strike. So we can move on from there." As the plaintiff points out, Local 1056 never argued to the Supreme Court that the court's statement was incorrect, at the time when it could most meaningfully be addressed. We further note, again in agreement with it, that the plaintiff was prepared to offer the testimony of a witness to establish the violation by Local 1056 of the December 15, 2005 preliminary injunction, and it was at that point that counsel for Local 1056 made his stipulation. Counsel for Local 1056 also expressed some confusion as to why the proffered testimony was needed, because he had told the plaintiff's counsel before the hearing began that he was prepared to make his stipulation. In light of that stipulation, the plaintiff's witness was not put on the stand, and, as already noted, Local 1056 did not correct the Supreme Court's above-quoted statement during the hearing. In any event, on its merits, we reject Local 1056's argument (*see New York Times Co. v Newspaper & Mail Deliverers' Union of N.Y. & Vicinity,* 1992 WL 110721, *3, 1992 US Dist LEXIS 6738, *6 [SD NY, May 12, 1992] [violation of court order by large numbers of union members is attributable to union; where contumacious actions of union members are sufficiently widespread they become the actions of the union]).

The appellants' remaining arguments are similar to those raised by the appellant union in the Local 100 case. For the reasons expressed in the opinion in that case, we reject them here as well. We must point out, though, that in this case, the contempt ruling was issued on December 21, 2005, the second day of the strike. In accord with our analysis in the Local 100 case, we conclude that the per diem fines have both retrospective and prospective components. We characterize the retrospective component as criminal in nature. Assuming that the court intended to impose the full per diem fines for the prejudgment disobedience of the preliminary injunction, that amount may be spread to the members of Local 1450, resulting in a payment of approximately $70 by each member. In the case of Local 1056, the per-member assessment would be about $90. We conclude that such amounts are not "serious" so as to trigger a right to a jury trial under the Sixth and Fourteenth Amendments (*see Pabst Brewing Co. v Brewery Workers Local Union No. 77, AFL-CIO,* 555 F2d 146, 152 [1977]).

We find no improvident exercise of the Supreme Court's discretion in the amounts fixed for the fines. Among other things, they were considerably less than the fines the plaintiff initially sought, not calculated to financially destroy the unions,

and, ultimately, prorated downward to account for the appellants' mid-day call to their members to return to work.

We have considered the appellants' remaining arguments, as well as those of the amicus curiae, and conclude that they are either unpreserved for appellate review or without merit. Miller, J.P., Luciano, Lifson and Covello, JJ., concur.